# ORIGINAL

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

2001 NOV 13   AM 11: 38

CLERK _W. Walker_
SO. DIST. OF GA.

|  |  |  |
|---|---|---|
| Faustino Alvarez-Lopez, Hilario Anaya-Castro, Francisco Arana-Lopez, Francisco Cota-Muñiz, Guadalupe Cruz, Benjain DeDios-Hernandez, Juan Flores-Sanchez, Rafael Gamas-Leon, Uriel Gomez-Madrigal, Juan Gonzalez-Marinas, Marco Antonio Gonzalez, Anselmo Hernandez-Martinez, Alejandro Lopez, Reyes Fernando Lopez-Moroyoqui, Elidelfonso Lopez-Perez, Jesus Lopez-Felix, Lauterio Lopez-Felix, Tomas Lopez-Salazar, Ramon Martinez-Perez, Oviel Medina-Gonzalez, Efren Mendoza-Lopez, Heliodoro Moroyoqui-Lopez, Rodolfo Navarro-Lopez, Raul Nieto-Tovar, Edgar Nuñez-Urbalejo, Jose Mario Perez-Gomez, Manuel Perez-Gomez, Victor Perez-Sanchez, Gilberto Perez-Valdez, Elpidio Ponce-Cruz, Ismael Ponce-Mayorga, Rufino Ponce-Oliva, Santana Rodriguez, Rafael Rodriguez-Cota, Roberto Rubio-Martinez, Rosario Salazar-Lopez, Alberto Osvaldo Urbalejo, Alberto Zuniga-Lizarraga, Juan Zuniga-Lizarraga, and Jaime Zurita-Sanchez | : : : : : : : : : : : : : : : : : : : : : : | Civil Action No. **CV601-128** |
|  Plaintiffs, | : : : |  |
| vs. | : : : |  |
| Robert Dasher, Gerald Dasher, Dasher's Harvesting, Inc., Dasher's Industries, Inc., and G & R Farms of Georgia, Inc., all d/b/a Dasher Harvesting, | : : : : : |  |
|  Defendants. | : |  |

-1-

## COMPLAINT

### PRELIMINARY STATEMENT

1.      This action is brought by forty migrant agricultural workers who were employed by the defendants doing business as Dasher Harvesting during the Vidalia onion planting season in 1999.  Dasher Harvesting did not pay the workers their minimum wages and breached their employment contract with the workers.

2.      In count one, the plaintiffs seek declaratory relief and damages for the defendants' violations of their rights under the Fair Labor Standards Act , 29 U.S.C. §§ 201-219.  In count two, plaintiffs seek declaratory relief and damages for the defendants' breach of its employment contract with the plaintiffs, entered into pursuant to the Immigration and Naturalization Act, 8 U.S.C. §§ 1101-1525, and its implementing regulations (hereinafter the "H-2A program").

3.      The plaintiffs have suffered economic damages due to the defendants' violations of federal and state law.  They seek an award of money damages and declaratory relief to make them whole for their losses caused by the defendants' unlawful conduct.

### JURISDICTION

4.      Jurisdiction is conferred upon this court by 28 U.S.C. § 1331 (Federal Question), 28 U.S.C. § 1337 (Interstate Commerce), 29 U.S.C. § 216(b) (FLSA), and 28 U.S.C. § 1367 (Supplemental Jurisdiction).

5.      Declaratory judgment is authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

### VENUE

6.      Venue is proper in the Southern District of Georgia pursuant to 28 U.S.C. § 1391,

because the defendants either reside or are subject to personal jurisdiction there. Venue is proper pursuant to LR 2.1, because the defendants reside and/or the claim arose in the Statesboro Division of the Southern District of Georgia.

PARTIES

7.     Plaintiffs Faustino Alvarez-Lopez, Hilario Anaya-Castro, Francisco Arana-Lopez, Francisco Cota-Muñiz, Guadalupe Cruz, Benjain DeDios-Hernandez, Juan Flores-Sanchez, Rafael Gamas-Leon, Uriel Gomez-Madrigal, Juan Gonzalez-Marinas, Marco Antonio Gonzalez, Anselmo Hernandez-Martinez, Alejandro Lopez, Reyes Fernando Lopez-Moroyoqui, Elidelfonso Lopez-Perez, Jesus Lopez-Felix, Lauterio Lopez-Felix, Tomas Lopez-Salazar, Ramon Martinez-Perez, Oviel Medina-Gonzalez, Efren Mendoza-Lopez, Heliodoro Moroyoqui-Lopez, Rodolfo Navarro-Lopez, Raul Nieto-Tovar, Edgar Nuñez-Urbalejo, Jose Mario Perez-Gomez, Manuel Perez-Gomez, Victor Perez-Sanchez, Gilberto Perez-Valdez, Elpidio Ponce-Cruz, Ismael Ponce-Mayorga, Rufino Ponce-Oliva, Santana Rodriguez, Rafael Rodriguez-Cota, Roberto Rubio-Martinez, Rosario Salazar-Lopez, Alberto Osvaldo Urbalejo, Alberto Zuniga-Lizarraga, Juan Zuniga-Lizarraga, and Jaime Zurita-Sanchez, at all times relevant to this action, were temporary foreign agricultural workers within the meaning of 8 U.S.C. § 1101 (a)(15)(H)(ii)(a).

8.     Plaintiffs' permanent residences are in Mexico.

9.     Plaintiffs came to the United States temporarily to work in defendants' Vidalia onion planting operation, pursuant to the H-2A program, described in paragraphs 16 through 19, *infra*.

10.     Plaintiffs, at all times relevant to this action, were employed in the production of goods for sale in interstate commerce.

11.     Defendants Robert Dasher and Gerald Dasher d/b/a Dasher Harvesting (hereinafter

referred to as "Dasher Harvesting"), are individuals residing in Glennville, Tattnall County, Georgia; together, they own and operate a business engaged in the production of produce, including Vidalia onions, in Glennville, Tattnall County, Georgia.

12.    Upon information and believe, defendant Dasher's Harvesting, Inc. d/b/a Dasher Harvesting (hereinafter referred to as "Dasher Harvesting") is a business engaged in the production of produce, including Vidalia onions, in Glennville, Tattnall County, Georgia.

13.    Upon information and believe, defendant Dasher's Industries, Inc. d/b/a Dasher Harvesting (hereinafter referred to as "Dasher Harvesting") is a business engaged in the production of produce, including Vidalia onions, in Glennville, Tattnall County, Georgia.

14.    Defendant G & R Farms of Georgia, Inc. d/b/a Dasher Harvesting (hereinafter referred to as "Dasher Harvesting") is a business engaged in the production of produce, including Vidalia onions, in Glennville, Tattnall County, Georgia.

15.    Defendants, together doing business as Dasher Harvesting, at all times relevant to this action, were employers as defined by the FLSA, 29 U.S.C. § 203(g), and the H-2A program regulations found at 20 C.F.R. § 655.100(b).

STATUTORY AND REGULATORY STRUCTURE OF THE "H-2A PROGRAM"

16.    An agricultural employer in the United States may import temporary foreign workers (H-2A workers) if the United States Department of Labor (hereinafter "US DOL") certifies that (1) there are not enough workers in the United States to perform the job, and (2) the employment of the H-2A workers will not adversely affect the wages and working conditions of workers in the United States who are similarly employed. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1). These provisions, along with the implementing Immigration and Naturalization Service ("INS") and US

DOL regulations, are commonly referred to as the "H-2A program."

17.     Employers requesting H-2A workers must file a temporary labor certification application with the US DOL Regional Administrator responsible for the area where the job is located. 20 C.F.R. §§ 655.101(a)(1) and (b)(1).  The application must include a job offer that complies with the requirements of 20 C.F.R. §§ 655.102 and 653.501.  See 20 C.F.R. § 655.101(b)(1).  These regulations establish the minimum benefits, wages, and working conditions required in an H-2A job offer in order to avoid adversely affecting similarly employed United States workers.  20 C.F.R. §§ 655.0(a)(2) and 655.102.

18.     The job offer, commonly referred to as a "clearance order," is used to recruit both United States and H-2A workers.

19.     If the minimum requirements are satisfied and the job offer is otherwise valid, United States worker availability is tested by use of the interstate employment service system, administered in Georgia by the Georgia Department of Labor.  If it is determined that sufficient United States workers are not available to fill the jobs, the United States Department of Labor (US DOL) certifies the need for temporary foreign workers, and the United States Attorney General, through the INS, issues H-2A visas for the number of job opportunities requested by the employers and not filled by United States workers.

FACTUAL ALLEGATIONS

20.     In September 1999, as part of the Defendants' temporary labor certification application, Dasher Harvesting prepared and submitted to the US DOL a job offer, i.e., an Agricultural and Food Processing Clearance Order (Employment and Training Administration Form 790), a true and accurate copy of which is attached hereto as Exhibit 1.

21.     Dasher Harvesting sought 100 workers to perform the following job:

Worker will proceed down row and place onion root first in hole created by pegger.

Worker will tap soil around root. Worker will not miss any holes. Worker will not

damage plant. Pulling onions, trying them into bundles, & putting bundles into field

bags. (Ex.1, p. 1).

22.     The clearance order (job offer) contained a certification that the order described the

actual terms and conditions of employment being offered and contained all material terms and

conditions of the job.

23.     The clearance order constituted the written employment contract between the

defendants and the plaintiffs, pursuant to 20 C.F.R. § 655.102(b)(14).

24.     The period of employment listed on the contract was from October 25, 1999 to

January 15, 2000.

25.     The contract stated that forty hours of work per week were available during that time

period.

26.     The contract explicitly incorporated the US DOL regulations at 20 C.F.R. § 655

Subpart B and otherwise, including the following:

(a)     that all work would be paid at a rate of at least the adverse effect wage rate
        (hereinafter "AEWR") in effect at the time the work was performed, $6.30 per hour;

(c)     that workers, upon completion of 50% of the contract period, would be reimbursed
        the costs of transportation and meals ("daily subsistence") while traveling from the
        place from which the worker came to the place of employment;

(d)     that workers, at the completion of the contract, would be reimbursed the costs of their

-6-

return trip from the place of employment to the place from which the worker came, including daily subsistence; and

(d)     that defendants would comply with all applicable federal laws, including the Fair Labor Standards Act.

27.     The US DOL approved the clearance order and directed that recruitment of United States workers proceed under the terms of the clearance order and program regulations.

28.     An inadequate number of United States workers were said to have been either recruited or found to accept the job with Dasher Harvesting described in their clearance order.

29.     Therefore, in order to fill their labor needs, Dasher Harvesting, pursuant to its approved clearance order, subsequently recruited and hired the plaintiffs in Mexico.

30.     After plaintiffs were recruited and hired by Dasher Harvesting, they paid a visa application fee and purchased visas, which were required in order to come to Georgia to provide the labor which the defendant was unable to procure domestically.

31.     The visa expenses referred to in paragraph 30, *supra*, were incurred by the plaintiffs primarily for the benefit or convenience of the defendants.

32.     The plaintiffs then paid transportation and subsistence costs from their homes in Mexico to Glennville, Georgia, in order to provide the labor that defendants was unable to procure domestically.

33.     The transportation expenses referred to in paragraph 32, *supra*, were incurred by the plaintiffs primarily for the benefit or convenience of the defendants.

34.     Transportation from Mexico was arranged by Dasher Harvesting or by its employees, contractors, or agents.

-7-

35.     The plaintiffs arrived in Glennville, Georgia in November 1999.

36.     The plaintiffs began working at the Dasher Harvesting job site shortly after arrival.

37.     At all relevant times, the plaintiffs were in compliance with their work contract.

38.     The defendants provided terms and conditions of employment to the plaintiffs that were materially different from those described in the work contract.

39.     The plaintiffs did not receive reimbursement for any of their transportation expenses or visa expenses in their first week of work.

40.     The full amount that plaintiffs paid for their transportation and subsistence from the place where they came in Mexico to Glennville, Georgia was not reimbursed to them at any time.

41.     The amount that plaintiffs paid for their visas was not reimbursed to them at any time.

42.     Plaintiffs received neither the AEWR in effect ($6.30), nor the federal minimum wage ($5.15), for each hour or portion thereof during some or all of the pay periods worked.

43.     Upon completion of the contract period, the defendants did not pay to the plaintiffs money to cover transportation and daily subsistence costs incurred during their return trip from Glennville, Georgia to the place from where they came in Mexico.

44.     The defendants have utilized the H-2A program to obtain Mexican workers for their labor needs subsequent to the contract with the plaintiffs, and upon information and belief, defendants will continue to utilize said program to obtain labor for their future needs.

COUNT I

Fair Labor Standards Act - Minimum Wage

45.     Plaintiffs incorporate the allegations set forth above.

46.     This count sets forth a claim for declaratory relief and damages by the plaintiffs for

-8-

defendants' violations of the FLSA.

47.     At all times relevant to this action, plaintiffs were employed by defendants within the meaning of the FLSA.

48.     In violation of 29 U.S.C. § 206(a), the defendants failed to pay each of the plaintiffs the applicable minimum wage for every compensable hour of labor they performed because the defendants failed to supplement the piece-rate earnings of the plaintiffs so as to raise their individual pay period wages to a rate equal to the minimum wage, $5.15 per hour.

49.     In violation of 29 U.S.C. § 206(a), the defendants failed to pay each of the plaintiffs the applicable minimum wage during their first week of work because the defendants failed to reimburse plaintiffs for their out-of-pocket expenses, described in paragraphs 30 and 32, *supra*, which were incurred primarily for the benefit or convenience of the defendants.  See 29 U.S.C. § 203(m) and 29 C.F.R. § 531.3(d)(1).

50.     As a consequence of these violation of plaintiffs' rights under the FLSA, plaintiffs are entitled to recover from defendants their unpaid minimum wages, and an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b).

51.     The defendants' violations of the FLSA alleged in this count were willful.

<u>COUNT II</u>

<u>Breach of Contract (Clearance Order)</u>

52.     Plaintiffs incorporate the allegations set forth above.

53.     This count sets forth a claim for declaratory relief and damages by plaintiffs for defendants' breach of their employment contract with the plaintiffs.

54.     Defendants offered and plaintiffs accepted employment on specific terms and

conditions.

55.    The specific terms and conditions are detailed in the written employment contract (clearance order), attached hereto as Exhibit 1.

56.    The defendants breached their employment contract with the plaintiffs by failing to pay them $6.30 (the AEWR) for each hour worked or portion thereof worked.

57.    The defendants breached their employment contract with the plaintiffs by failing to reimburse plaintiffs for the full amount of their transportation and subsistence costs incurred on their trip from their homes in Mexico to Georgia.

58.    The defendants breached their employment contract with the plaintiffs by failing to reimburse plaintiffs for the full amount of their transportation and subsistence costs incurred on their return trip from Georgia back to their homes in Mexico.

59.    The defendants breached their employment contract with the plaintiffs by failing to reimburse to them their visa expenses, as required by the FLSA.

60.    Plaintiffs are entitled to recover from the defendants, all damages caused by defendants' breaches of the employment contract, including but not limited to payment of lost wages, transportation and subsistence costs, and visa expenses.

WHEREFORE, the Plaintiffs request that this Court:

a.    Enter a declaratory judgment that the defendants violated plaintiffs' rights under the Fair Labor Standards Act;

b.    Enter a declaratory judgment that the defendants breached their employment contract with the Plaintiffs;

c.    Grant judgment against the defendants, jointly and severally, and in favor of

-10-

plaintiffs, in the amount of plaintiffs' respective unpaid minimum wages, plus an

equal amount of liquidated damages, as set out in Count I;

d.      Grant judgment against the defendants, jointly and severally, and in favor of

plaintiffs, in the amount of plaintiffs' respective unpaid costs and expenses and

unpaid wages as set out in Count II;

e.      Cast all costs on the defendants; and

f.      Grant the plaintiffs such other and further relief as this Court deems just and proper.


Respectfully submitted,

Nancy J. Schivone
Georgia Bar No. 629398
Lead Counsel
152 South Ridge Avenue
P.O. Box 1669
Tifton, Georgia 31793
Tel: 229-386-3566
Fax: 229-386-3588

Lisa J. Krisher
Georgia Bar No. 429762
Phyllis J. Holmen
Georgia Bar No. 363850
1100 Spring Street, Suite 200-A
Atlanta, Georgia 30309
Tel: 404-206-5175
Fax: 404-206-5346

William J. Cobb
Georgia Bar No. 171850
Cobb & Gardner, LLP
755 Commerce Drive, Suite 800
Decatur, Georgia 30030

-11-

Tel: 404-601-4120
Fax: 404-601-4133

Attorneys for Plaintiffs

# EXHIBIT 1

Agricultural and Food Processing
Clearance Order

U.S. Department of Labor
Employment and Training Administration

READ CAREFULLY: In view of the statutorily established basic function of the employment service as a no-fee labor exchange, that is, as a forum for bringing together employers and job seekers, neither the ETA nor the State agencies are guarantors of the accuracy or truthfulness of information contained on job orders submitted by employers. Nor does any job order accepted or recruited upon by the JS constitute a contractual job offer to which the ETA or a State agency is in any way a party.

OMB Approval No. 1205-0134

1. Industry Code

2. Job Order Number

3. Occupational Title and Code
FARMWORKER DIVERSIFIED
407.663.010

4. Employer's Name and Address (Number, Street, City, State, Zip Code, and Telephone Number)
Nasher Harvesting
102 Dasher Road
Glennville, Georgia
30427
(912) 654 2118

5. Anticipated Period of Employment
From: 10/25/99  To: 01/15/2000

6. Clearance Order Issue Date

Job Order Expiration Date

7. Preferred Crew Leader/Worker's Name and Address
N A

Social Security Number

Telephone Number

Leader's Functions
N/A
Supervises
Transports
Pays
Assumes OASI

YES NO

8. No. & Type of Workers Requested
Total Number 100
No. Individual 100
No. Family

9. Wage Rates, Special Pay Information and Deductions

| Crop Activity | Flat Rate (i.e., hr, wk.) | Piece Rate | Unit | Est. Hourly Rate Equiv. | C/L Wage Rate |
|---|---|---|---|---|---|
| SEE ATTACHED | | | | | |

(See attachment no. 1-I)

10. Anticipated Hrs. of Work
Per Week 40

Normal Hours Per Day: Sun — Thu 7, Mon 7, Fri 7, Tues 7, Sat 5, Wed 7

11. Job Specifications (if additional space is needed, please use separate sheet of paper or reverse of form)

THIS JOB OFFER INCLUDES THE ACTIVITIES OF:

Worker will proceed down row and place onion root first in hole created by pegger. Worker will tap soil around root. Worker will not miss any holes. Worker will not damage plant. Pulling onions, tying them into bundles, & putting bundles into field bags.

HEAVY LIFTING. WORK IN EXTREMELY HOT WEATHER. DEEP PROLONGED BENDING AND REACHING. WILL WORK IN INCLEMENT WEATHER, INCLUDING RAIN. FARM, FIELD AND SHED SANITATION
(See attachment no. )

12. Location and Direction to Work Site
SEE ATTACHED
(See attach. no. )

13. Board Arrangements
FREE KITCHEN AND COOKING FACILITIES
(See attach. no. )

14. Location and Description of Housing
SEE ATTACHED

Employer assures the availability of no cost or public housing which meets the full set of applicable standards. (See attach. no. 1-B)

Number and Capacity of Housing Units
| | Barracks | | Family Units | | Single Rooms | |
| | No. | Total Cap. | No. | Total Cap. | No. | Total Cap. |
| | 2 | 100 | | | | |

Authorized Capacity 100

15. Referral Instructions
SEE ATTACHED
(See attach. no. 3-I)

16. Collect Calls Accepted
By Employer
By Order Holding Office

Yes No
☐ ☑
☐ ☐

17. Transportation Arrangements
SEE ATTACHED
(See attach. no. 4-F)

18. Distribution of Clearance Order

19. Address of Order Holding Office (include Telephone Number)
GA-DOL
148 International Blvd, Room 450
Atlanta, GA. 30303
(404) 656-3163

Name of Agency Representative (Include Telephone Number)
Sherri Wilson (404) 656-3164

20. Employer's Certification: This job order describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job.

Signature Robert E. Nasher

Title
12/03/99 10:32

Case 6:01-cv-00128-BAE Document 1 Filed 11/13/01 Page 15 of 20

Attachment to ETA 790
DASHER HARVESTING
(10/25/99-01/15/2000) #100

1. Contents of Job Offers and Assurances

A. Equivalent Treatment of U.S. and Alien Workers

The employer will offer U.S. workers at least the same opportunities, wages, benefits, and working conditions as those which the employer offers or intends to offer to non-immigrant foreign workers. The employer will furnish a copy of the work contract with the employment application.

B. Housing

Housing is provided at no cost to workers who are not reasonably able to return the same day to their place of residence. Housing is not provided to non-workers unless it is the prevailing practice to do so. No charge will be made for beds or cooking utensils and similar items furnished to workers to whom housing is provided hereunder unless unlawfully removed or damaged beyond normal wear and tear. Housing includes free kitchen facilities. The kitchen and other common areas will be shared. Housing provided will be shared without regard to sex. Separate toilet facilities shall be provided by the employer for males and females. If said housing is not ready on the applicable date the workers will be housed in local hotels and motels.

Workers who reside in such housing agree to be responsible for maintaining the housing in a neat and clean manner. Before occupancy, housing shall be in compliance with OSHA housing standards. Workers residing in the housing will be responsible for maintaining the compliance standards as posted in the housing unit. If there is a problem with the housing, it is the worker's responsibility to mention it to the employer.

Reasonable repair costs of damages or loss of property, other than that caused by normal wear and tear, will be deducted from the employee's pay if it is shown that the individual did the damages. The employer will deduct repair costs from the employee's pay over whatever time period necessary so that such deductions will not result in a worker's wages going below the federal minimum wage.

The employer retains possession and control of the housing premises at all times and workers, if provided housing under the terms of the work contract, shall vacate the housing promptly upon termination of employment.

Workers residing in employer's housing may have mail directed to them at the employer's address on attached ETA 790. Workers will be provided a telephone number where they may be contacted in case of emergency while residing in the housing. The employer will not accept collect calls.

C. Workers' Compensation

Workers' compensation or equivalent insurance will be provided at no cost to all workers in the occupation for which workers are being sought. The employer's proof of insurance coverage will be provided to the Regional Administrator before certification is granted.

D. Employer Provided Items

The employer will provide all supplies and equipment required in the

1

performance of the specified work free of charge.  The employer will charge the worker for reasonable cost related to the worker's refusal or negligent failure to return any property furnished by the employer or due to such worker's willful damage or destruction of such property.

**E.     Meals**

The employer will furnish free cooking and kitchen facilities to those workers who are entitled to live in the employer's housing, so the workers may prepare their own meals.  Workers will buy their own groceries.  Once a week, the employer will offer to those workers who wish to participate, free transportation to and from town where there are shopping stores, a post office and pay telephone. Grower may provide meals and charge employee $7.60 per day or more with prior approval of US-DOL. This is at the option of the employer.

**F.          Transportation**

The employer will not advance transportation and subsistence costs to worker for transportation to the place of employment.  The employer will not repay transportation for workers that do not have legal, suitable documents to comply with IRCA, are discharged for lawful job-related reason, apply for employment knowingly unable to perform the job activities, or who abandon employment.  This applies only to workers for whom the employer is legally obligated to supply housing. This benefit is not applicable to local workers who are not eligible for employer-provided housing.

After fifty percent of the employment period is complete, the employer will reimburse the worker for reasonable cost of transportation and subsistence from the place of recruitment to the grower's location.

Upon completion of the employment period, the employer will pay for worker's reasonable cost of return transportation and subsistence to the place of recruitment, except when the worker will not be returning to the place of recruitment due to subsequent employment with another employer who agrees to pay such costs, the employer only pays for the transportation to the next job.

The amount of such transportation payment will be equal to the worker's actual transportation costs not to exceed the most economical and reasonable common carrier transportation charges for the distance involved.  In lieu of transportation payments to workers, the employer reserves the right to charter or otherwise arrange to provide transportation.  If the employer arranges transportation, and the worker does not use that transportation, the worker will be reimbursed only for the cost of the employer arranged transportation.  Employees eligible for reimbursement under the program will be provided subsistence reimbursement.

The employer will provide transportation and subsistence under this agreement to workers that are terminated resulting from reasons beyond the employer's control or Acts of God which makes fulfillment of this contract impossible or if the worker is displaced by a U.S. worker under the 50 percent rule.

This benefit does not apply to workers who voluntarily quit employment before the end of the contract or who are terminated for cause, provided the employer notifies the Department of Labor of such action. The employer will offer free transportation for workers from the employer's housing to the daily work site.   The use of the transportation by the worker is voluntary, and no worker will be required as a condition of employment to utilize the transportation

2

offered by the employer.
Once a week, the employer will offer to provide free transportation to and from town where there are shopping stores, a post office and pay telephone.

**G.        Three-fourths Guarantee**

The employer guarantees the worker an opportunity to work for at least three-fourths of the number of hours in the work days during the period of the contract and all amendments thereof are in effect. The period of the contract is from the first work day after arrival of the worker (workers ready, willing, able and eligible to work) at the place of employment until the expiration date of the work contract. The offer of employment expires as of the date specified on the work contract and any extension.  For the purpose of the 3/4 guarantee, a workday consists of seven hours Monday-Friday and five hours on Saturday.

If the workers are not offered the opportunity to work for three-fourths of such hours during this period, then the employer will supplement the pay of the workers as though the worker had actually worked.  If the worker is paid on a piece rate or other similar incentive system, the worker's average hourly piece rate earning (if higher than the AEWR) will be used in determining the amount due under this guarantee.

If the employer fails to notify the order holding office at least 10 working days prior to the original date of need, the employer will provide workers referred through the Agricultural Recruitment System a full week's work (as stated on the ETA 790) the week beginning with the anticipated date of need.  For this situation, the employer will pay eligible workers referred through the interstate clearance system the AEWR for the first week starting with the original anticipated date of need.  However, the employer may require the workers to perform alternative work (general farm labor and maintenance activities) if the guarantee cited is invoked.  If the worker fails to notify the order holding office of continued interest in the job no sooner than nine working days and no later than five days before the date of need, the worker will be disqualified from the above mentioned assurance.

The three-fourths guarantee and transportation reimbursements shall be void from the beginning should the worker voluntarily abandon employment before the end of the contract period or the worker is terminated for a lawful job-related reason.

The three-fourths guarantee will not apply to any H-2A worker who may be displaced by a U.S. worker under the fifty-percent rule.

**H.        Records, Earnings Statement and Deductions**

The employer will keep and maintain adequate and accurate payroll and supporting records in accordance with the provisions of 20 CFR 655.102(b)(7).

Each payday the employer will furnish to the worker one or more written statements showing name and payroll identification number; work starting and ending time; hours worked including hours offered and hours actually worked; reasons employee did not work when work was offered; hourly rate or piece rate (if piece rate, the number of units produced); total earnings; gross wages; itemization of all deductions; and net payment.

The employer will make the following deductions from the worker's wages FICA taxes and federal income tax as required by law, cash

3

advances and repayment of loans, repayment of overpayment of wages to the worker, payment for articles which the worker has voluntarily purchased from the employer, long distance telephone charges attributed to a worker, recovery of any loss to the employer due to the worker's damage (beyond normal wear and tear) or loss of equipment or damage to housing where it is shown that the worker is responsible and any other deductions expressly authorized by the worker in writing.

I.        Rates of Pay
   This is a piece rate job with a minimum guarantee.  Workers are guaranteed that their total earning will be at least the prevailing rate for the crop activity or at least the AEWR ($6.30), whichever is higher, for all hours worked in the payroll period.   If the USDOL promulgates a new AEWR, it will become the guaranteed wage rate as of the published (effective) date.
   This job includes activities paid by the hour and piece rate activities.

| Activity | Piece Rate | Unit | Estimated Hourly Rate Equivalent |
|---|---|---|---|
| Pulling onions, tying them into bundles and putting bundles into field bags. | 3 cents | 80 count bundle | $6.30 |

The payroll period shall be weekly.

K.          Contract Impossibility
The employer will terminate the work contract of any worker(s) whose services are no longer required for reasons beyond the control of the employer or an act of God.   In the event of such termination, the employer will be bound by the three-fourths guarantee from the first work day after arrival to the date of termination.

L.          Copy of Work Contract
A copy of the work contract and work rules will include the terms and conditions of employment specified in the regulations.  A copy of such contract will be provided to the worker no later than the day on which the worker begins employment.

M.          Occupational Qualifications
The employer will not require workers to have a specified level of education or experience.

2.   Assurances
The employer agrees to abide by the assurances specified in the conditions of 20 CFR Part 655, Subpart B, including the regulations at 20 CFR 655.103.

3.   Other Conditions of Employment
     A.      Termination & Discipline
The employer may terminate the worker for any lawful job-related reason and will notify the local office when/if such a termination occurs.   The employer may discipline the worker including requiring the worker to leave (without pay) the field for a period determined by

the foreman, unpaid suspension from employment for up to three days, or termination of employment. Workers will be terminated or disciplined for failure to follow work rules (see attachments).

**B.      Injuries**
Workers will be covered by Worker's Compensation Insurance or equivalent employer provided insurance for injuries arising out of and in the course of employment. Employer's proof of insurance coverage will be provided to the Regional Administrator before certification is granted.

**C.      Employer Obligation If Employment Is Extended**
No extension of employment beyond the period of employment specified in the job order shall relieve the employer from paying the wages already earned.

**D.      Employer Notification of Changes in Employment Terms and Conditions**
The employer will expeditiously notify the Atlanta USDOL Regional Administrator, ETA, by telephone immediately upon learning that a crop is maturing earlier or later, that weather conditions, over recruitment, or other factors have changed the terms and conditions of employment.

**E.      Outreach Workers**
Outreach workers shall have reasonable access to workers pursuant to 20 CFR 653.107 and 20 CFR 653.501.

**F.      Training**
The training period for all crop activities is 2 days starting with the first day of employment to acclimate the worker to the physical demands of farm work and to familiarize workers with job specifications and to demonstrate proper harvest methods and other crop specific issues. After completion of the training period, workers will be expected to meet production standards which equal to the minimum wage specified in Section 6 of the Fair Labor Standards Act; are to keep up with fellow workers; and not detrimentally affect other workers productivity. The employer will attempt to put workers into a group where their abilities will be approximately equal to the rest of the group, so that the workers can keep up and not hinder production. The employer will attempt at least two times to find another job which a worker can do better, if they are making the Minimum Wage of $5.15, but not the AWER or prevailing rate for the job. After the training period, workers failing to meet applicable production standards for the pay period may be terminated.

**G.      Days and Hours of Work**
Workers will report to work at the designated time and place as directed by the grower each day. The standard work is seven hours per day Monday-Friday and five hours on Saturday; however, workers may be requested to work more hours per day but will not be required to do so. Workers may be requested to work on federal holidays and on the Sabbath but will not be required to do so. Workers may volunteer to work additional hours when work is available.
Workers should expect occasional periods of little or no work because of weather, crop or other conditions beyond the employer's control.

These periods can occur anytime throughout the season.

Workers are not required to work on Sabbath or on federal holidays which are New Year's Day, January 1; Martin Luther King, Jr.'s birthday, the third Monday in January; Washington's birthday, the third Monday in February; Memorial Day, the last Monday in May; Independence Day, July 4; Labor Day, the first Monday in September; Columbus Day, the second Monday in October; Veteran's Day, November 11; Thanksgiving Day, the fourth Thursday in November; and Christmas Day, December 25.

## H.    Job Specifications

Most job duties listed below require workers to work in a bent, stooping or kneeling position.  Workers must use care when harvesting all crops listed below not to break or damage the plant.  All crops harvested must meet U.S.D.A. standards or standards contained in the employers contract with the buyer.

Harvesting specifications can change during the season due to crop or market condition.  Workers will be expected to conform to the specific instructions given for each day's work.   Instructions and general supervision will be provided by the farm owner, supervisor or a designated employee.

Daily individual work assignments, crew assignments and location of work will be made by the grower or supervisor as the needs of the farming operation dictate.   Workers may be assigned a variety of duties in any given day and different tasks on different days.

Transplanting onion: Worker will take onion plant and insert root into hole made by pegger proceeding down row without missing holes. Worker will tap soil around root of onion. Worker will be careful not to damage plant in any way.

Farm, field & shed sanitation: Worker will keep area clean of debris and sanitary.

## I.    Referral Instructions

Upon hiring, the employment authorization status of all workers will be verified through the    Social Security Administration, when possible.  Applicants referred on this job order must possess legal, suitable documents  to complete the I-9 form as required by IRCA. Workers should be fully apprised by the local office of the terms, conditions and nature of employment prior to referral.   Applicant referrals can be made faxing the attached Screening Application to Tonda at: AgriStaff: (912) 559/ 3022. Please be sure all information is legible and current so Applicant can be sent hiring letter with reporting instructions without delay.

## J.    Other

There are not any strikes, work stoppage, slowdowns or interruption of operations by employees at the place where the workers will be employed.

There are not any arrangements made with the grower for the payment of a commission or other benefits for sales made to the workers.

## K.    Miscellaneous

The employer is an Equal Employment Opportunity employer. Local workers will be allowed to work within commuting distance.  Where possible, groups who want to stay together will be allowed to do so.

6